May it please the court, James Barney on behalf of the appellant. The inventors of the Pattinson suit developed a radiation-curable fiber-optic coating with a unique combination of physical properties that is an improvement over the prior art. The claims at issue are narrowly confined to these physical properties and the commission erred in finding that they are invalid for lack of written description. Now the commission incorrectly assumed that these claims are, quote, exceedingly broad and almost limitless in scope. That assumption is based primarily on the chemical composition limitations, but the claims are also limited to the physical property limitations. Let me ask you a couple of housekeeping questions. Yes, Your Honor. In the red brief at 59, the ITC says you're arguing for the first time on appeal that example 3 of the 659 patent is a working example. Did you raise that below and if so, where? We don't contend that it's a working example, Your Honor. We contend that it's close. It's not a working example. Okay. That answers it more than sufficiently. In the red brief at 23, the ITC says claim 21 of the 508 does not limit the weight percentage of the reciting oligomer. What's the scope of that claim? I'm sorry, Your Honor. What is the scope of that claim? Yeah. Claim 21 does not limit the weight of the oligomer. That's correct. It basically describes the polyester polyol backbone, but it doesn't have weight percentages and it doesn't have the specific listing of all the ingredients. Okay. At 41 in the red brief, the ITC claims that claim 21 is broader than the other claims in what it calls group 1, that is 1 to 10 and 13 to 50 and 21. Do you agree that it is broader? No, Your Honor. I do not because the claims are primarily limited by their physical properties and whether the... So affirming on one won't affect the others? I think that's correct, Your Honor. That's why I said these were housekeeping. Go ahead. So, Your Honor, there is no requirement. I would push back on the Commission's overarching conclusion that these claims are exceedingly broad in scope and vast in scope because I think that did underpin the Commission's decision in many ways. These claims are not exceedingly broad and vast in scope because they're all limited to these physical property limitations. Anything outside the scope of any of those physical property ranges puts you outside the scope of the claims. And the working examples that support... The physical property limitations have to be achieved simultaneously? That's correct, Your Honor. And that fact seemed to make the Commission think that that led to the exceeding breadth of the claims. We just respectfully disagree with the Commission on that. The fact that they all have to be achieved simultaneously makes the claims exceedingly narrow. Anything outside the scope of those claims, of those physical properties, is outside the scope. And even the Commission acknowledged from our working examples that even moving slightly outside, making small adjustments puts you outside the scope of the claims. That's not the hallmark of a vast and unbounded claim. I thought what the Commission was trying to say is that for sure the physical properties narrow the scope of the genus but not narrow it sufficiently so that you still have a very wide genus. Well, Your Honor, the... What's wrong with that? What's wrong with it is that the working examples are all clustered within the narrow scope of the intersecting properties. The Commission came up with hypothetical examples using the extremes of the chemical ingredient ranges, but there's no evidence that those hypothetical examples would fall within the scope of the claim. The written description requirement only requires support for what is claimed. It doesn't require support for hypothetical species that fall outside the scope of the claims. It was the Respondent's burden to show that there are species that fall within the scope of the claim, including the physical property limitations, and yet are not described. They did not meet that burden. They certainly didn't show anything in the prior art that falls within the scope of the claims and yet is outside the description. And they didn't show any of the hypothetical formulations that the Commission relied on would actually fall within the scope of the claim. So they're outside of what the statute requires. The statute requires support for what is claimed, not each individual limitation taken in isolation. And so in summary on that aspect of my argument, I would just say the Commission erred by failing to take into consideration all of the claimed limitations and instead focusing on each limitation individually, which is the wrong type of analysis. Now, the other error the Commission made is its finding that the chemistry involved in these claims is unpredictable. The Administrative Law Judge, who sat with his trial for seven days and heard the testimony and judged the credibility of every witness at trial, at the end of a seven-day hearing concluded that the Group 1 claims are fully supported by the written description and fully enabled for their full scope because, and I'm quoting, the chemistry was well known and fairly predictable, and because the patents provide a sufficient disclosure that a person of ordinary skill in the art would be able to work from the examples and accomplish the full set of the claimed compositions. The Commission didn't observe any witness testimony and wasn't able to judge the credibility of any of the witnesses, but it simply replaced that finding of the ALJ with the contrary finding that the chemistry is unpredictable. And it based that finding on just two pieces of evidence. First, it pointed to the witness's, excuse me, the inventor's testimony that the invention took a long time and was difficult to achieve, and that's true. But that testimony is not relevant to unpredictability in the written description context because that written description inquiry doesn't focus on where the inventor started. It focuses on where they ended up and what they disclosed in the specification. So it is true that the inventor spent two to three years optimizing these physical properties that are claimed in these claims. But once they finished that process, they disclosed their work in the patent. They explained the chemistry involved and they disclosed numerous working examples and comparative examples that can be used as a roadmap to practice these claims. So that's the quid pro quo of the patent system. A person of ordinary skill in the art with the patent in hand and the working examples as a roadmap can practice this invention. And so the inventor's testimony about what the inventors did and how long it took them to get to the invention really isn't relevant to whether a person of ordinary skill in the art with the patent in hand and the written description would find the claims unpredictable to practice. Now the only other evidence the commission relied on was in overturning the ALJ's finding was Mr. Overton's testimony that the chemistry involved is predictable in a general sense, but that there needs to be rounds of designed experiments to achieve the claimed combination of physical properties. Again, that evidence doesn't support a finding of unpredictability because there's no evidence that rounds of designed experiments is at all unusual in this field or that it's a hallmark of unpredictability. Just because you have to do rounds of designed experiments in a chemistry context to get from point A to point B does not mean that point B is unpredictable. And in fact, experimentation is routine, is a routine part of the optimization process in many fields. I would also point out that aside from the lack of substantial evidence supporting this finding of unpredictability, we believe the commission erred as a procedural matter because it didn't point to any clear error in the ALJ's finding of predictability. Commission Rule 21043D sets forth the criteria for granting a petition for review, and one of those criteria is the appearance that there's a finding or conclusion of material fact that is clearly erroneous. The commission never showed that the ALJ's finding of predictability is clearly erroneous, and therefore we believe it abuses discretion. Doesn't the commission take the view that the physical properties tend to work against one another, so to speak, and that that contributed to the unpredictability? Yes, Your Honor, but the... So tell me, why isn't that a ground for seeing the claims as unpredictable? Again, that wasn't... Admittedly, you've got a very wide range of compositions. You're not denying that. Right. You're just saying someone within that wide range won't meet the physical limitations, and therefore they're outside the scope of the claim. Right. But why isn't there a... And we're working on a substantial evidence test here, as you know, for written description. Why couldn't one reasonably think that because the physical limitations are fighting against each other, so to speak, that that contributes to the conclusion that there's unpredictability here? Because there's no evidence of that, Your Honor. The evidence is, and I don't think the other side's going to dispute this, that each one of those physical properties has a predictable response. It has a predictable correlation to a chemical property. By itself. By itself. When they have to react simultaneously together. Right. That might make it difficult to optimize, to reach the proper point that you want to reach, but it doesn't make it unpredictable. They know where they're going. The testimony from the inventor was, it was difficult to achieve. We knew where we were going, but it's an optimization process. So the invention here is that they focused on three physical properties that they hypothesized, if they could optimize to a certain point, would make a better coding. And they ended up being right about that. They optimized those properties and they ended up with a commercially successful coding that's far superior. On your view, there isn't a written description problem here at all. There might or might not have been an enablement problem. Again, enablement's not something that was... Isn't that basically what you're trying to tell us? Well, we don't think there is an enablement problem, but I will concede that... I know you don't, but you're saying if we wanted to have an argument about where there might be a problem here. I would concede that, Your Honor. I mean, we don't think there's an enablement problem, but I get your point. I'm just trying to get a handle on exactly where your vision is on this case. Right. I think you stated it accurately. If I have, I would like to just very briefly talk about the group three claim, because I think it's an important point. You're free to, you're in your response time. I'll try to be very brief. The group three claim is different than the group one and two claims. There's no dispute that the inventors came up with an important scientific discovery, which overturned the conventional understanding of how two physical properties are related, the modulus and the thermal expansion coefficient. The industry had thought for years that those two were inextricably and inversely related, and the inventors found out that they are not. They can be decoupled. And the inventors taught a screening process where you can find formulations that have both a low modulus and a low thermal expansion coefficient. That was a significant advancement in the art. Two critical points. It is undisputed that the claimed invention is described verbatim in the specification, including all of the ranges, and it is undisputed on appeal that the claim is supported, is enabled for its full scope, does not require undue experimentation. That was the ALJ's finding. It's not, it can't be disputed on appeal.  It cannot be the case that the claim was fully enabled and requires no undue experimentation to practice by its full scope, was fully disclosed and described verbatim in the specification, and yet the inventor was not in possession of it. Those are not congruous facts. Moreover, the commission's finding that the group three claim is unpredictable, which was never a finding the ALJ made, the commission made that finding on its own, is incompatible with the ALJ's undisputed finding that the claim can be practiced without undue experimentation. If something can be practiced without undue experimentation, by definition, it is not unpredictable. So that finding is incompatible. With that, Your Honor, unless you have questions, I'll save the remainder of my time. You can do that. So you all have 15 minutes. You're going to get 15 minutes. If the red light comes on and you keep talking, you're just taking away from somebody else. Okay. Okay. Thank you. Thank you, Your Honor. May it please the Court. For each group of claims, DSM simply drew offense around the desired result of a coding composition or coded fiber having favorable properties. The claims here are just like the claims in Abbey v. Jansen, a case cited in the commission's brief. There, the claims were invalid when they were directed to a broad, generic structure, in that case, an antibody that had a desired property, a claimed binding rate. And in that case, that binding rate was not predictably obtained. Let me ask you this. In the gray brief, DSM says it's legally erroneous to only look at the chemical composition limitations in determining claim scope without considering the physical property limitations. Do you agree with that? Well, the commission did look at the physical property limitations. Those limitations are just like a desired result. They do limit the claims, but they're a lot like a desired result. And that brings me back to the Abbey case I was just talking about. So in Abbey, there was a broad, generic structure, an antibody that had a claimed property, a binding rate. And in that case, there was also unpredictability around that binding rate. The court looked at those claims and said that it's a broad, generic structure. It's unpredictable. So you're just claiming a desired result. It didn't matter that it was a property. You look at the context, nature, and the scope of the claims, predictability, and it's a desired result. They're claiming every single composition that has these desired properties. If there is a composition that is, let's say, 98% oligomer, 2% reactive diluent, and it has these properties, they're going to say that they have possession of that, that they claim that. But the problem is they did not disclose that. If you look at the disclosure, they're all very similar compositionally. And there's testimony from Mr. Overton, MUV's expert witness, that says that it's not predictable. There's no directions for modifying those working examples to achieve the full scope of the claims. And that's at APPX 11153, and that is exactly the case in ABBE. In ABBE, the pin site for that is 759F3D1301. And going back to unpredictability, the Commission's unpredictability finding is supported by substantial evidence. Here at APPX 11143, Mr. Overton stated- Why don't you deal directly with Mr. Barlow's argument that basically the Commission just flipped the ALJ's decision with regard to the predictability issue? What were the grounds? Why did the Commission say the ALJ was wrong? The ALJ said this is basically not unpredictable art, right? No, the ALJ said that the chemistry of forming primary coding compositions using acrylate chemistry is generally predictable. The ALJ did not address the simultaneous presence of the predictability of obtaining a coding or coding composition that has three different properties or two different properties simultaneously. That is actually the error that the ALJ made here. The ALJ did not consider the aspect at issue. Now AREAD says that very specifically, you have to consider the predictability of the aspect at issue. The Commission followed AREAD very closely. Mr. Overton is saying he's not trying to claim the compositions that don't meet the physical limitations. He doesn't have to describe them. Well, they didn't claim that. They only wanted to claim- So he's got, if you say he's got half a million particular compositions, and he runs through three physical limitations. And only out of the vast genus, only the ones that will pass the test is what he's claiming. And he says he's got specific examples of ones that pass. So we think that the argument misses the point because we don't know that they know which compositions, they don't know the scope of the compositions that actually meet that. They only provided four very similar examples. Their expert witness said that he didn't know how many would reach, how many would have the properties. And he couldn't even confirm if they were more than- You heard me ask Mr. Browning about the Commission seemed to think that these physical limitations, when you're trying to accomplish them simultaneously in the vernacular, bang up against each other and make it a greater problem for predictability. That's what the Commission sort of said, but they didn't explain why. Is part of your argument that in the simultaneous achievement of some out of the many, many, many compositions will meet all three tests simultaneously, it's actually the functioning of the chemical, of the physical restrictions themselves creates a problem? Yeah, the interaction between the different properties, that's unpredictable. Well, explain to me why that's so. What exactly, what's happening chemically, creates a banging against each other problem? Yeah, so what you're doing in this process, you're taking these individual ingredients and then you're reacting them. So this is- I understand what the concept is, but to me, just to say the words is conclusory. What's the factual underpinning for the notion that in chemistry, when you're trying to achieve these three things at the same time, these three physical limitations, the very limitations themselves create barriers to being able to produce a composition that meets all three. I just, I hear the, it's like talk the talk. But I say, explain to me in English language why that's so. I don't know. Can you explain it? Yeah, I can explain it. So if you, the witness gave an example of modulus, of cross-link density to improve modulus. So if you use cross-link density to, this is cross-link density, modulus, and cure speed. If you increase the cross-link density, you will improve the cure speed, which is good for the claims, but you also increase the modulus. And they want a low modulus. So that's one example of the conflicts and properties that the witness has talked about. Another example is polarity. Polarity is one property of the ingredients. You can use polarity to improve cure speed, but if you increase polarity, you ruin the modulus retention ratio, ruins the word that the, that MEV's expert used. If the group three claims are enabled, then that means that one of ordinary skill in the art knows how to make and use the full scope of those claims. So the enablement argument, it was not petitioned for review. So we have to accept on this record that the group three claims are enabled. But the enablement argument presented to the AOJ had nothing to do with predictability. Well, Mr. Barney's argument is simply that if we have to take as accepted that the group three claims are enabled, then doesn't that tell us that the notion that there's unpredictability running around in the group three claims won't work? Well, enablement and written description are very different. Well, I heard that talk. But if one of ordinary skill in the art can practice the full scope of the claim, then, and then the claims are unpredictable, how can the two propositions live comfortably in the same bed? When the AOJ considered the enablement argument, he did not consider predictability, though. The argument was based, the argument was based on the difficulties of using a software package. The AOJ only considered, like, so it wasn't, the AOJ didn't make a ruling on the unpredictability aspect. It's a completely different argument. And I'm putting an interview. You're eating your friend's time. Make it three and three. Hey, Ben, I'm from Fish and Richardson. Do you have an answer to the question of why if the group three claims are enabled, they are also described? Well, my understanding of the written description requirement is that the specification has to show that the inventors had possession of the full scope of the claims. And this clearly didn't happen here. Well, but if one, if the same person, we're asking whether one of ordinary skill in the art would appreciate that the inventor possessed. Right. That same person of ordinary skill in the art can easily, readily enable the full scope of the claims. How can they do that if the reason why you can't do it is because everything is unpredictable? Well, first of all, there were obviously no working examples of the group three claims. I think Mr. Barney's argument is simply using the enablement not to prove that there's written description, but to disprove that unpredictability underlies all these claims. Well, there are two different issues, as you know, obviously, Your Honor. Enablement just means that- But unpredictability is part of enablement, obviously. We know that from the celebrated case that people are talking about that have the heightened requirement. Right. Right. So you need to know about unpredictability, whether you're talking enablement or whether you're talking written description. Right. Well, the testimony in the case clearly showed that these functional properties were in conflict. They were unpredictable. Mr. Overton testified that if you change one, it changes another, and I can address your question on that if you'd like. Well, how much of that's going on in the group three claims? In the group three claims, you have the same chemical compositions. Mr. Barney says that- What about physical limitations? Well, the physical limitations are the functional limitations. First of all, for volumetric thermal expansion, you're using a software program that supposedly shows different properties than the actual thermal expansion. Nobody in the industry uses this software program. And, in fact, in order to try and run these tests, we had to go buy it. Even Mr. Overton- No, but ALJ said the computer program does the trick. Right. And, therefore, that piece of the physical property is enabled. Right. We have to accept that as true. Right. I agree with you, Your Honor. But there's still a broad base of chemical compositions that could possibly apply. And, here, the inventors weren't even able to come up with one that satisfied the physical requirements of the claim. So, they had a number of examples in the patent, none of which worked for this particular claim. So, I don't see how anybody could say that the inventors had possession of the full scope of that claim with, you know, millions or billions of possible chemical compositions that would give you these two physical properties when they weren't even able to come up with one in the patent. You realize your red light's on. Yep. So, Your Honor, I just want to make a point about the scope of the claims. Identix, which Judge Wallach was on, on October 30th, the decision came out. And it was a very similar argument to what Mr. Barney's making here, that the claim scope is very narrow. In that case, there were billions of possibilities. The majority on that panel decided that the claims were not enabled. What's the name of it? It didn't satisfy the written description requirements. What's the name of the case you're talking about? Identix versus, sorry. Feel Hot. So, I think that case is really right on point here. Unless you have any other questions, I'll cede my rest of the time to Mr. Olson. You guys are going to split this thing up like this. I'm going to hold your feet to the fire. You've got two minutes. Good morning. May it please the Court, I'm Bradley J. Olson of the law firm Barnes & Thornburg, representing intervener OFS Fitel. My time is short, Your Honors. I will make it briefly and straight to the point. There is a separate and independent basis, well supported in the record, for this Court to affirm the Commission's opinion on the invalidity of the claims of the 508 patent. That independent basis is that the glass optical fiber technology itself can be used to reduce attenuation loss, wholly independent of the influence of the primary coatings on the glass fibers. The record is replete in supporting that the 508 patent on appeal fails to describe reducing attenuation loss using such technology. Indeed, it only describes reducing attenuation using a primary coating on a glass optical fiber. This panel may affirm the Commission's opinion based on the lack of support in the 508 patent for engineering the core of glass optical fiber because the Commission has already made the factual determination that the claims of the 508 patent lack adequate written description support under Section 112. That independent basis is set forth in the joint appendix on pages 21 to 23. Therefore, in view of the foregoing, OFS respectfully requests this panel to affirm the Commission's opinion. Thank you, and I will certainly answer any questions you may have. Thank you, Counselor. Thank you. Good wrap-up. Thank you. Just a few points, Your Honor. With respect to the Group 3 claims that Judge Clevenger was questioning about, I did want to point out because my colleague mentioned that the unpredictability finding was based on the tension between the properties, and indeed, that's what the Commission did. It took that testimony about the tension of the physical properties, which only applies to the Group 1 and 2 claims, and it transplanted that to the Group 3 claim. Nobody, the ALJ didn't do that. The ALJ made no finding that that claim was unpredictable. The reason that's erroneous is the physical properties in the Group 3 claim are not in tension with each other. That's the whole point of the patent. That was the whole discovery, is that you can decouple the modulus from the thermal expansion coefficient, so they're not operating against each other. So the basis for the Commission's finding of unpredictability is not only contrary to the ALJ's finding, but it's contrary to the chemistry involved. The only other point that I'd like to make is with respect to Mr. Olson's comment on the alternative basis. We briefed this, so I'll just reiterate that the Commission did not accept that ruling from the ALJ. So that was the basis of the ALJ's ruling on the Group 2 claims for why it found lack of written description. It found that there was an inadequate disclosure of the role that the glass fiber plays. When the Commission reviewed that, the Commission opted not to accept that basis and instead ruled on an alternative basis, and so we don't believe that basis is part of this case anymore. I don't believe it's properly on appeal. And that's briefed, and I don't really need to say much more about that. Are there any questions before I sit down, Your Honors? You can sit down. Thank you. Thank you, Counsel. The matter will stand submitted.